■ FIREMAN'S FUND INSURANCE COMPANY, Petitioner, v JAMES P. CORCORAN, as Superintendent of Insurance of the State of New York, et al., Respondents.—In this CPLR article 78 proceeding transferred to this court by order of the Supreme Court, New York County (Stanley Parness, J.), entered on or about September 6, 1988, the determination of the respondent James P. Corcoran, Superintendent of Insurance, dated September 1, 1987, which, *inter alia,* directed that petitioner afford insurance to George E. Sutphin in the amount of $1 million, is unanimously confirmed, and the article 78 petition dismissed, without costs.

George E. Sutphin leased the tractor which he owned to respondent BCT Corporation, an affiliate of respondent Boise Cascade Corp., for purposes of hauling hazardous waste cargo in a trailer owned by BCT. In order to meet the requirements of applicable Federal regulations for the interstate transportation of hazardous waste, it was necessary to maintain $1 million in liability insurance on the vehicle. The leasing agreement between Sutphin and BCT provided that BCT would maintain such insurance and Sutphin would reimburse BCT, on a weekly basis, for the cost of said insurance. BCT maintained insurance with Forum Insurance Company until June 30, 1986 when Forum declined to renew the policy. BCT then obtained insurance with Carolina Casualty Company, but Carolina advised BCT that the insurance would not cover vehicles situated in New York, such as Sutphin's, since Carolina was not licensed in New York. Accordingly, BCT and Sutphin agreed that instead of the previous arrangement, Sutphin would attempt to obtain his own insurance directly, naming Boise Cascade as an additional insured.

On July 2, 1986, Sutphin applied to the New York Automobile Insurance Plan (the Plan) for liability insurance in the amount of $1 million. The risk was assigned by the Plan to petitioner Fireman's Fund Insurance Co. (Fireman's), in accordance with the special risk distribution procedure of the Plan, with coverage effective as of July 7, 1986. Sutphin was advised

of the assignment and the effective date, and was issued temporary insurance identification cards. On July 23, 1986 Fireman's requested additional information from Sutphin, which was furnished on August 4, 1986. Additionally, Sutphin's insurance agent issued a formal policy change request on August 1, 1986, requesting that BCT and Boise Cascade be named as additional insureds.

On August 9, 1986, Sutphin's insured vehicle was involved in an accident, resulting in two fatalities. On August 17, 1986, Fireman's, which had retained the application and deposit premium, returned the application to the Plan, with a letter directing cancellation of the insurance policy *ab initio*. The Plan refused to accept this attempted cancellation, and referred the matter to the Governing Committee of the Plan, which upon review of the matter directed Fireman's to provide coverage from the July 7, 1986 effective date. The Governing Committee determined, however, that Sutphin was not eligible for $1 million coverage and instead directed Fireman's to provide maximum coverage of $250,000/500,000/100,000.

An administrative appeal to the Insurance Department was taken by Sutphin and Boise Cascade with respect to the Governing Committee's determination limiting coverage. At the hearing before an Administrative Hearing Officer of the Superintendent of Insurance, it was urged that Sutphin was entitled to coverage limits of $1 million. The only witness to testify at the hearing was the manager of truck commerce for Boise Cascade. No witnesses were called by either Fireman's or the Plan despite an opportunity to do so. While Sutphin did not himself testify, he was present during the hearing, but no effort was made by Fireman's to elicit any testimony from him.

The opinion and decision of the Superintendent held that an assigned risk policy could not be canceled from its inception, or *ab initio*, but that any cancellation would be prospective, or *in futuro*, and, therefore, the policy in question was in effect at the time of the accident. The Superintendent further held that section 10 (A) (1) of the Plan requires an assigned insurer to provide coverage to the extent required by law and that since applicable Federal law required a minimum of $1 million coverage for vehicles transporting hazardous materials in interstate commerce, $1 million coverage was required to be provided here.

Fireman's challenges the Superintendent's administrative determination in the instant proceeding which was trans-

ferred to this court pursuant to CPLR 7804 (g). The sole issue before this court is whether the Superintendent's determination requiring Fireman's to provide $1 million of liability insurance to Sutphin is rational and supported by substantial evidence in the record.

The evidence in this record supports the Superintendent's determination. Section 12 (A) of the Plan provides that coverage shall be effective at the time and date specified in the notice issued by the Plan. Accordingly, here, when the Plan received Sutphin's application and assigned coverage to Fireman's in a written notice with the effective date of July 7, 1986, coverage became effective as of that date. If Fireman's wished to cancel the insurance, it was required to give the specific types of notice required by Plan § 18 (2) (1), and as specified in the policy, and could not merely return the application to the Plan, without any notice to Sutphin, as it attempted to do on two separate occasions. Having failed to provide the requisite notice, coverage was not effectively canceled prior to the date of the accident. Moreover, even upon proper cancellation of the policy, the cancellation would not invalidate the policy *ab initio.* The law is well settled that cancellation of a policy issued under the Plan may only be prospective and not *ab initio,* even if the application is deceptive or fraudulent. *(Aetna Cas. & Sur. Co. v O'Connor,* 8 NY2d 359; *Teeter v Allstate Ins. Co.,* 9 AD2d 176, *affd* 9 NY2d 655.) The sound policy supporting this rule recognizes that insurers have a duty to discover fraud at the earliest possible moment before, as here, an accident occurs and the rights of innocent third parties are implicated, because, as it has often been said, liability insurance is not the concern solely of the insured and the insurer. *(Aetna Cas. & Sur. Co. v O'Connor, supra; Teeter v Allstate Ins. Co., supra.)* Consequently, the determination by the Superintendent that the coverage was in effect and not canceled at the time of the accident was rational, in accordance with law, and supported by the record.

The Superintendent's further determination that coverage under the policy was to be $1 million is similarly supported by the record, since Plan § 10 (A) (1) requires the assigned carrier to comply with the minimum requirements of the law in providing the amount of coverage. Here, there was substantial evidence in the record that the applicable Federal regulations required $1 million coverage, and the determination of the Superintendent is in accord with a straightforward interpretation of the Plan section. Fireman's contention that section 10 (A) (1) should not apply to Sutphin since only Boise Cascade,

and not Sutphin, was required by Federal regulation to obtain coverage is untenable. The purpose of the section establishing minimum coverage requirements is the protection of the public, and in arranging for such protection the private parties to the leasing agreement are free to allocate the risk and responsibility for obtaining coverage among themselves, as Boise Cascade and Sutphin did here. *(See, Carolina Cas. Ins. Co. v Insurance Co.,* 595 F2d 128.) No matter what that arrangement was, $1 million minimum coverage was still required by law, and therefore the insurer assigned by the Plan was obligated to provide that minimum.

The interpretation by an administrative agency of its own rules and regulations, if not irrational or unreasonable, should generally be upheld by the courts in deference to the agency's experience and expertise in its specialized field *(see, Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.,* 66 NY2d 444). Here, the Superintendent's interpretation of the sections regarding minimum coverage is rational and supports the determination that Fireman's must afford $1 million coverage. Accordingly, the determination should be confirmed.

In its brief before this court, Fireman's attempts to raise many additional issues, such as Sutphin's eligibility for the Plan, which Fireman's did not argue before the administrative agency. We emphasize that the scope of our review in an article 78 proceeding is limited to those issues actually raised or decided at the administrative level. Despite many opportunities before the Governing Committee and the Superintendent of Insurance to raise the claims now briefed for the first time, Fireman's failed to do so. Accordingly, these points are beyond our scope of review. Concur—Sullivan, J. P., Ellerin, Smith and Rubin, JJ.